_____
Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
March 29, 2013

_____

| | |
|---|---|
| Jessica C.K. Boelter (IL SBN 6277801) | Donald A. Lattin (NV SBN 693) |
| Thomas A. Labuda, Jr. (IL SBN 6225401) | Christopher D. Jaime (NV SBN 4640) |
| Matthew G. Martinez (IL SBN 6297132) | MAUPIN, COX & LEGOY, P.C. |
| SIDLEY AUSTIN LLP | 4785 Caughlin Parkway |
| One South Dearborn Street | Reno, Nevada 89519 |
| Chicago, Illinois 60603 | Telephone:  (775) 827-2000 |
| Telephone:  (312) 853-7000 | Facsimile:  (775) 827-2185 |
| Facsimile:  (312) 853-7036 | dlattin@mclrenolaw.com |
| | cjaime@mclrenolaw.com |
| Proposed Reorganization Counsel for | |
| Debtors and Debtors in Possession | Proposed Local Reorganization Counsel for |
| | Debtors and Debtors in Possession |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Chapter 11 |
| RODEO CREEK GOLD INC. | Case No. BK-13-50301 (MKN) |
| ☐ Affects this Debtor | Jointly Administered |
| ☒ Affects all Debtors | |
| ☐ Affects Hollister Venture Corporation | **AMENDED ORDER (A) SCHEDULING A HEARING TO CONSIDER THE PROPOSED SALE OF THE DEBTORS' ASSETS AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (B) ESTABLISHING BIDDING PROCEDURES RELATING TO THE SALE AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS, AND (C) GRANTING CERTAIN RELATED RELIEF** |
| ☐ Affects Touchstone Resources Company | |
| ☐ Affects Antler Peak Gold Inc. | |

On February 25, 2013, Rodeo Creek Gold Inc. ("Rodeo Creek") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") filed a motion ("the "Sale Motion") for entry of an order, pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002, 6004 and 9014 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Nevada (the "Local Rules"), seeking, among other things:

(a) approval of certain sale procedures, in connection with the sale (the "Sale") of all of the right, title and interest in the Debtors' assets (the "Acquired Assets");

(b) the scheduling of a hearing (the "Sale Hearing") to consider approval of the Sale;

(c) the scheduling of a deadline for bidding on the Acquired Assets and the scheduling of an auction (the "Auction") for the Acquired Assets;

(d) establishment of certain procedures for the sale, assumption and assignment of certain executory contracts and unexpired leases (collectively, the "Contracts and Leases"), including notice of proposed cure amounts (the "Cure Notice");

(e) approval of a form of notice of the Sale and the Bidding Procedures (the "Sale Notice") and a publication notice (the "Publication Notice"); and

(f) the granting of certain related relief (such relief as requested in the aforementioned subsections (a) – (f), the "Bidding Procedures Relief").

WHEREAS, on March 1, 2013, the Court entered an order [Docket No. 67] (the "Original Bidding Procedures Order")[1] granting the Bidding Procedures Relief requested in the Sale Motion.

WHEREAS, on March 8, 2013, the Official Committee of Unsecured Creditors (the "Committee") was appointed in these Chapter 11 Cases.

WHEREAS, the Committee requested certain modifications to both the Original Bidding

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Original Bidding Procedures Order.

Procedures Order and the Bidding Procedures annexed thereto as Exhibit 1 (the "Original Bidding Procedures") and Credit Suisse AG ("Credit Suisse"), the agent on the Existing Hollister Facility, the Canadian DIP Facility and the Debtors' post-petition financing facility has requested an extension of certain dates and deadlines established therein. Upon consideration of the Committee's proposed modifications to the Original Bidding Procedures Order and the Original Bidding Procedures and Credit Suisse's requested extensions, and upon the application filed by the Debtors on March 25, 2013 seeking, *inter alia*, modification of the Original Bidding Procedures, it is hereby:

**ORDERED, ADJUDGED AND DECREED THAT:**

1. All findings and determinations made in paragraphs A through M of the Original Bidding Procedures Order are incorporated herein by reference.

2. The Original Bidding Procedures are hereby amended and superseded by the bidding procedures attached hereto as Exhibit 1 (the "Amended Bidding Procedures").

**Modification of Key Dates and Deadlines**

3. The following key dates and deadlines set forth in the Original Bidding Procedures Order shall be modified as follows:

    (a) The Bid Deadline shall be extended to be **April 19, 2013 at 12:00 p.m. (Eastern Time)**.

    (b) The Auction will be conducted at the **New York** offices of counsel to the Debtors, Sidley Austin LLP, at 787 Seventh Avenue, New York, New York 10019, on **April 23, 2013, commencing at 9:00 a.m. (Eastern Time)**.

    (c) The Sale Order Objection Deadline shall be extended to **4:00 p.m. (Eastern Time) on April 26, 2013**.

    (d) The Sale Hearing will be held on **May 2, 2013 at 1:30 p.m. (Pacific Time)** at the United States Bankruptcy Court for the District of Nevada, Foley Federal Building, 300 Las Vegas Blvd South, Las Vegas, Nevada 89101, before the Honorable Mike K. Nakagawa, Chief United States

Bankruptcy Judge. The Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment in open court or on the Court's docket.

(e) As was provided in the Original Bidding Procedures Order, any objections to adequate assurance of future performance of a Contract or Lease by the Successful Bidder or Backup Bidder must be made **by 9:00 a.m. (PT) on the date that is one (1) business day prior to the Sale Hearing**.

### Notice Procedures

4. Within one (1) business day of the entry of this Order, the Debtors shall send a copy of (i) this Order with the Amended Bidding Procedures attached as Exhibit 1 hereto and (ii) a redline comparison of the Amended Bidding Procedures against the Original Bidding Procedures, by overnight delivery, e-mail or facsimile, to each of the parties that received such service pursuant to paragraphs 8(a)-(g) of the Original Bidding Procedures Order.

5. Within two (2) business days of the entry of this Order, the Debtors shall send a copy of (i) this Order with the Amended Bidding Procedures attached as Exhibit 1 hereto and (ii) a redline comparison of the Amended Bidding Procedures against the Original Bidding Procedures, to the remainder of their consolidated creditor matrix by standard U.S. mail.

### No Other Modification of the Original Bidding Procedures Order

6. Except to the extent expressly modified by this Order or by the Amended Bid Procedures Order annexed hereto, nothing in this Order shall alter or affect the relief granted under the March 1, 2013 Bid Procedures Order.

**SUBMITTED BY:**

Donald A. Lattin, NV State Bar #693
Christopher D. Jaime, NV State Bar #4640
MAUPIN, COX & LEGOY, P.C.
4785 Caughlin Parkway
Reno, Nevada 89519
dlattin@mclrenolaw.com
cjaime@mclrenolaw.com

Proposed Local Reorganization Counsel
For Debtors and Debtors in Possession

1

2  Jessica C.K. Boelter, IL State Bar #6277801
   Thomas A. Labuda, Jr., IL State Bar #6225401
3  Matthew G. Martinez, IL State Bar #6297132
   SIDLEY AUSTIN LLP
4  One South Dearborn Street
5  Chicago, Illinois 60603

6  Proposed Reorganization Counsel for
   Debtors and Debtors in Possession
7

8  In accordance with Local Rule 9021, counsel submitting this document certifies as follows (check one):

9  ____ The court has waived the requirement set forth in Local Rule 9021(b)(1)

10
   ____ No party appeared at the hearing or filed an objection to the Motion.
11
    X   I have delivered a copy of this proposed order to all counsel who appeared at the hearing,
12  and each has approved or disapproved the order, or failed to respond, as indicated below [list
    each party and whether the party has approved, disapproved, or failed to respond to the
13  document]:

14
        Approved by Pachulski Stang Ziehl & Jones LLP, Counsel to Official Committee of
15      Unsecured Creditors; waived as to all others.

16  ____ I certify that this is a case under chapter 7 or 13, that I have served a copy of this order with
    the motion pursuant to Local Rule 9014(g), and that no party has objected to the form or content
17  of the order.

18                                              ###

19

20

21

22

23

24

25

26

27

28

# **EXHIBIT 1**

## **Amended Bidding Procedures**

**BIDDING PROCEDURES**

Set forth below are the bidding procedures (the "Bidding Procedures"), as amended pursuant to that certain *Amended Order (A) Scheduling A Hearing to Consider the Proposed Sale of the Debtors' Assets and Approving the Form and Manner of Notice Thereof, (B) Establishing Bidding Procedures Relating to the Sale and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts, and (C) Granting Certain Related Relief*, entered on March 29, 2013, to be employed in connection with an auction (the "Auction") for the sale (the "Sale") of all of the right, title and interest in the Debtors'[1] assets (the "Acquired Assets").

At a hearing following the Auction (the "Sale Hearing"), the Debtors, upon consultation with the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases (the "Committee") will seek entry of an order (the "Sale Order") from the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") authorizing and approving the Sale to the Qualified Bidder (as defined below) that the Debtors determine to have made the highest or otherwise best bid (the "Successful Bidder"). If there is only one Qualified Bidder, the Debtors may seek to obtain approval of the Sale at the Sale Hearing without holding an Auction.

**I.    Assets to be Sold**

By the Motion for: (I) an Order (A) Scheduling a Hearing to Consider the Proposed Sale of the Debtors' Assets and Approving the Form and Manner of Notice Thereof, (B) Establishing Bidding Procedures Relating to the Sale and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts, and (C) Granting Certain Related Relief; and (II) an Order (A) Approving the Sale, (B) Authorizing the Sale, Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Certain Related Relief, dated February 25, 2013 (the "Sale Motion"),[2] the Debtors sought, *inter alia*, approval of these Bidding Procedures and Bankruptcy Court authority to sell the Acquired Assets pursuant to the Auction. Except as otherwise provided in definitive documentation with respect to the Sale, all of the Debtors' rights, title and interest in and to any Acquired Assets sold in connection with, or as a result of, the Sale shall be sold free and clear of all liens, claims (including, without limitation, as defined in section 101(5) of the Bankruptcy Code), rights or claims based on any successor or transferee liability, interests, encumbrances, rights, remedies, restrictions, liabilities and contractual commitments of any kind or nature whatsoever, whenever arising, whether at law or in equity (collectively, "Interests"), in accordance with section 363 of the Bankruptcy Code.

Notwithstanding anything to the contrary in the Asset Purchase Agreement (as defined below), the Debtors are not selling any claims arising under Chapter 5 of the Bankruptcy Code or any non-ordinary course third-party litigation claims (including, without limitation, any D&O claims), and such claims shall not constitute Acquired Assets.

---

[1] The "Debtors" are Rodeo Creek Gold Inc., Antler Peak Gold Inc., Hollister Venture Corporation and Touchstone Resources Company.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion.

The Debtors reserve the right, in consultation with the Consultation Parties (as defined below), to seek approval of the Sale of the Acquired Assets through a single transaction or through separate transactions under separate purchase agreements with different purchasers in the event that the combination of such Sales is in order to obtain the highest aggregate value for the Acquired Assets.

## II.     The Bidding Procedures

The Debtors, in consultation with their professionals, Credit Suisse AG, in its capacity as agent (the "DIP Agent") under the debtor-in-possession credit facility (the "Priority Term Facility"), Credit Suisse AG, in its capacity as agent under Existing Hollister Credit Facility (the "Hollister Agent"), those certain beneficial holders of the 8% convertible debentures issued by GBGL on November 19, 2009, that are represented collectively by Fraser Milner Casgrain LLP, Brown Rudnick LLP, and Werksmans Attorneys (the "Noteholders"), the Monitor in the CCAA Proceedings (the "Monitor"), the Committee and the Board of Directors of GBGL (collectively, the "Consultation Parties") shall (i) determine whether any person is a Qualified Bidder; (ii) provide reasonable assistance to Interested Parties (as defined below) in conducting their due diligence investigations subject to the provisions below; (iii) receive offers from proposed bidders; and (iv) negotiate any offers made to purchase the Acquired Assets.  Any person who wishes to participate in the Auction must be a Qualified Bidder.  Neither the Debtors nor their representatives or advisors shall be obligated to furnish information of any kind to any person who has not executed a confidentiality agreement as provided for below.

## III.    Due Diligence

The Debtors may afford any potential bidder the opportunity to conduct a reasonable due diligence review in the manner determined by the Debtors in their discretion.  The Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline.  The Debtors have either provided or intend to use reasonable efforts to provide to all parties that have expressed an interest in purchasing the Acquired Assets and who the Debtors believe, in the Debtors' discretion, in consultation with the Consultation Parties, may have a legitimate interest in purchasing, and the ability to purchase, the Acquired Assets (each an "Interested Party" and, collectively, the "Interested Parties"), certain information in connection with the proposed Sale, including, among other things, these proposed Bidding Procedures and a proposed Asset Purchase Agreement (the "Asset Purchase Agreement").

Upon execution of a Confidentiality and Standstill Agreement (a "Confidentiality Agreement"), in a form and substance satisfactory to the Debtors, the Debtors will give each Interested Party access (through a virtual data room or otherwise, the "Data Room") to various financial data and other relevant and confidential information, subject to the Debtors' right to either exclude or limit such access for competitive concerns.  The Debtors shall provide the Committee's financial advisors with notice of any updates to the Data Room (defined below) established in connection with the Sale.

**IV.     Bid Deadline**

Any person or entity wanting to participate in the Auction must submit a Qualified Bid (as defined below) for the Acquired Assets **to be actually received on or before April 19, 2013 at 12:00 p.m. (Eastern Time)** (the "Bid Deadline"), in writing, to (i) CIBC World Markets Inc., 161 Bay Street, P.O. Box 500, Toronto, Ontario, Canada, M5J 2S8 (Attn: Michael Stewart); (ii) counsel to the Debtors, Sidley Austin LLP, One South Dearborn Street, Chicago, Illinois 60603 (Attn: Jessica C.K. Boelter) and Maupin, Cox & Legoy, 4785 Caughlin Pkwy., P.O. Box 30000, Reno, Nevada 89520 (Attn: Christopher D. Jaime); and (iii) counsel to the Committee, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA 90067 (Attn: Jeffrey Pomerantz and Shirley Cho).

Immediately after the Bid Deadline, or at any earlier time to the extent bids are received prior to the Bid Deadline, the Debtors shall deliver copies of bids submitted to them for the purchase of the Acquired Assets to each of the Consultation Parties or such parties' counsel, as appropriate.

**V.      Qualified Bids**

Each person or entity that submits a Qualified Bid (as defined below) by the Bid Deadline shall be referred to herein as a "Qualified Bidder." A "Qualified Bid" is a bid that complies with all of the following:[3]

(a)   it includes a letter stating that the bid is irrevocable until the earlier of (i) the approval by the Bankruptcy Court of the Successful Bidder, and (ii) forty five (45) days following the Bid Deadline; provided, however, that if such bid is selected as the highest or otherwise best Qualified Bid or the Backup Bid, it shall remain irrevocable until the closing of the Sale to the Successful Bidder or the Backup Bidder, as the case may be;

(b)   it includes a duly authorized and executed purchase agreement (a "Proposed Purchase Agreement") in the form of the Asset Purchase Agreement specifying the purchase price, expressed in United States Dollars (the "Proposed Purchase Price"), together with all exhibits and schedules thereto, and such ancillary agreements as may be required by the bidder with all exhibits and schedules thereto (or term sheets that describe the material terms and provisions of such ancillary agreements) and such ancillary agreements and the proposed orders to approve the Sale by the Bankruptcy Court, as well as copies of such materials marked to show the amendments and modifications to the Asset Purchase Agreement;

(c)   it does not include any request or entitlement to any breakup fee, expense reimbursement or similar type of payment. Further, by submitting a bid, a bidder

---

[3] The Debtors, in consultation the Consultation Parties, may waive compliance with any one or more of the Qualified Bid requirements specified in these Bidding Procedures, and deem such otherwise non-qualified bids to be Qualified Bids.

3

    shall be deemed to waive its right to pursue a substantial contribution claim in any way related to the submission of its bid or these Bidding Procedures;

(d)    it includes evidence sufficient to allow the Debtors, in consultation with the Consultation Parties, to make a reasonable determination as to the bidder's (and its direct and indirect owners' and their principals') financial and other capabilities to consummate the transaction contemplated in the Sale Motion and the Proposed Purchase Agreement, which evidence could include but is not limited to evidence of a firm, irrevocable commitment for all required funding and/or financing from a creditworthy bank or financial institution;

(e)    it is not conditioned on (i) the outcome of unperformed due diligence by the bidder and/or (ii) obtaining any financing capital and includes an acknowledgement and representation that the bidder has had an opportunity to conduct any and all required due diligence prior to making its bid;

(f)    it fully discloses the identity of each entity that is bidding or otherwise that will be sponsoring or participating in the bid, including the identification of the bidders' direct and indirect owners and their principals, and the complete terms of any such participation;

(g)    it includes an acknowledgement and representation that the bidder: (i) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets to be acquired and liabilities to be assumed in making its bid; (ii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the assets to be acquired or liabilities to be assumed or the completeness of any information provided in connection therewith, including by the Debtors, their professionals or any of their respective professionals and advisors, except as expressly stated in the Proposed Purchase Agreement submitted by it; (iii) is a sophisticated party capable of making its own assessments in respect of making its bid; and (iv) has had the benefit of independent legal advice in connection with its bid;

(h)    it includes evidence, in form and substance reasonably satisfactory to the Debtors, upon consultation with the Consultation Parties, of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the transaction contemplated by the Sale Motion and Proposed Purchase Agreement;

(i)    it is accompanied by a refundable deposit (the "<u>Deposit</u>") in the form of a wire transfer (to an account specified by the Debtors), or such other form acceptable to the Debtors, payable to the order of Rodeo Creek Gold Inc. in an amount equal to 10% of the Proposed Purchase Price, to be held and dealt with in accordance with these Bidding Procedures;

(j) to the extent known by the Qualified Bidder, it contains full details of the proposed number of employees of the Debtors who will become employees of the bidder and the proposed terms and conditions of employment to be offered to those employees;

(k) it (i) includes an acknowledgement and representation that the bidder will assume the obligations of each of the Debtors under executory contracts, unexpired leases, and licenses proposed to be assigned (or agrees to identify by the date that is two (2) business days prior to the Sale Hearing with particularity which of such executory contracts, unexpired leases, and licenses of the Debtors that the bidder wishes not to assume, or alternatively wishes to assume (the "Assumed Contracts"); (ii) contains the bidder's agreement to pay the related cure costs for any Assumed Contracts; (iii) indicates any Assumed Contracts the bidder must be permitted to assume as a condition of closing; and (iv) acknowledges that the Successful Bidder has the burden of satisfying any requirement to demonstrate adequate assurances of future performance under the Assumed Contracts;

(l) it provides for closing of the Sale by no later than May 31, 2013 and provides for the implementation of appropriate transition services to be provided by the bidder to the Debtors upon closing;

(m) if the bidder is an entity newly formed for the purpose of the transaction, the bid shall contain an equity or debt commitment letter from the parent entity or sponsor, which is satisfactory to the Debtors, in consultation with the Consultation Parties, that names the Debtors as third party beneficiaries of any such commitment letter with recourse against such parent entity or sponsor;

(n) it includes evidence, in form and substance reasonably satisfactory to Debtors, in consultation with the Consultation Parties, of compliance or anticipated compliance with any and all applicable U.S. and foreign regulatory approvals (including, if applicable, anti-trust regulatory approval and any approvals with respect to the grant or transfer of any mining permits or licenses), the anticipated time frame for such compliance and any anticipated impediments for obtaining such approvals;

(o) it contains other information reasonably requested by the Debtors in consultation with the Consultation Parties; and

(p) it is received by no later than the Bid Deadline.

If it is determined by the Debtors, in consultation with the Consultation Parties, that no Qualified Bids were submitted, the Debtors shall retain the right to not hold the Auction.

All Qualified Bids will be considered, but the Debtors, in consultation with the Consultation Parties, reserve the right to reject any and all bids other than the highest or otherwise best Qualified Bid.  Bids will be evaluated on numerous grounds.

Between the Bid Deadline and the Auction, the Debtors, in consultation with the Consultation Parties, may discuss, negotiate or seek clarification of any Qualified Bid from any Qualified Bidder.  Without the written consent of the Debtors, in consultation with the Consultation Parties, a Qualified Bidder may not modify, amend or withdraw its Qualified Bid, except for proposed amendments to increase the Proposed Purchase Price or otherwise improve the terms of the Qualified Bid for the Debtors, during the period that such Qualified Bid remains binding as specified herein; provided, however, that any Qualified Bid may be improved at the Auction as set forth herein.

The DIP Agent, in its capacity as Agent under the Priority Term Facility, and the Hollister Agent, in its capacity as Agent under the Existing Hollister Facility, shall, as contemplated by section 363(k) of the Bankruptcy Code, have the right to submit, in its own right or through a designee or assignee, a credit bid in the amount of such loan facilities at or before the Auction; provided, however, that any such credit bid shall provide for the payment in full in cash of the Carve-Out obligations, any accrued and unpaid administrative expenses reflected in an approved budget, the Wind-Down Cost obligations (in each case as defined in the Interim DIP Order) and the "Completion Fee" payable to CIBC pursuant to the CIBC Engagement Letter.  Any credit bid submitted by the DIP Agent and/or the Hollister Agent (including any nominee or designee thereof), up to the total amount outstanding under the Priority Term Facility and the Existing Hollister Facility, plus any amount in excess thereof in cash or other consideration, shall qualify as a "Qualified Bid," without the necessity of submitting a Deposit or complying with the other requirements set forth herein.

## VI.     Good Faith Deposit

All Deposits shall be retained in a segregated account or accounts by Rodeo Creek Gold Inc.  If a Qualified Bidder becomes the Successful Bidder, the Deposit paid by the Successful Bidder whose bid is approved at the Sale Hearing shall be applied to the purchase price to be paid by the Successful Bidder upon closing of the Sale.  The Deposit paid by the Backup Bidder, if there is a Backup Bidder, shall be retained until the closing of the Sale or, if the Backup Bidder becomes the ultimate purchaser of the Acquired Assets pursuant to these Bidding Procedures, shall be applied to the purchase price to be paid by the Backup Bidder upon closing of the Sale. The Deposits of all bidders not selected as having the highest or otherwise best Qualified Bid or selected as the Backup Bidder shall be returned to such bidders within five (5) business days of the earlier of (i) the determination of the Successful Bidder by the Debtors, and (ii) ten (10) days following the Bid Deadline.  If these Bidding Procedures are terminated in accordance with the provisions hereof, all Deposits shall be returned to the bidders within five (5) business days of the date upon which these Bidding Procedures are terminated.  Qualified Bidders should provide return wire transfer instructions to Rodeo Creek Gold Inc. upon the payment of any Deposit.  If an entity selected as the Successful Bidder (including, if selected as the Successful Bidder, the Backup Bidder) breaches its obligations to close, it shall forfeit its Deposit to the Debtors; provided, however, that the forfeit of such Deposit shall be in addition to, and not in lieu of, any other rights in law or equity that any of the Debtors has or have against such breaching entity.

## VII. The Auction

### A. Auction Date

In the event that the Debtors timely receive more than one Qualified Bid, the Debtors shall conduct an Auction. The Auction will be conducted at the **New York** offices of counsel to the Debtors, Sidley Austin LLP, at 787 Seventh Avenue, New York, New York 10019, on **April 23, 2013, commencing at 9:00 a.m. (Eastern Time)** (which location, date and/or time may be changed by the Debtors upon the consent of the Consultation Parties and upon notice to the Qualified Bidders) to determine the Successful Bidder for the Acquired Assets. Any bidder submitting a Qualified Bid may appear and submit its highest and best bid at the Auction. The Auction will be transcribed and may be adjourned by announcement at the Auction without further notice.

### B. Auction Procedures

By 5:00 p.m. (Eastern Time) on the day preceding the start of the Auction, the Debtors will provide all Qualified Bidders with a copy of what they believe to be the highest or otherwise best Qualified Bid, together with any additional materials the Debtors have deemed appropriate, and will inform each Qualified Bidder who has expressed its intent to participate in the Auction of the identity of all Qualified Bidders that may participate in the Auction.

The following parties shall also be authorized to attend the Auction in addition to the Debtors and their professionals: (i) the U.S. Trustee; (ii) the members of the Committee and the Committee's counsel and advisors, (iii) representatives of the DIP Agent, (iv) representatives of the Hollister Agent, (v) one representative of the Noteholders and the Noteholders' U.S. counsel, (vi) representatives of Franco-Nevada U.S. Corporation, (vii) representatives of Sandvik Mining and Construction USA, LLC, (viii) the Board of Directors of GBGL and (ix) the Monitor.

Bidding at the Auction shall begin initially with the highest or otherwise best Qualified Bid announced by the Debtors, in consultation with the Consultation Parties, and shall subsequently continue in minimum increments of at least $250,000, or such other amount the Debtors, in consultation with the Consultation Parties, determine to facilitate the Auction. Bidding will continue with respect to the Auction until the Debtors determine that they have received the highest or otherwise best bid for the Acquired Assets. After the Debtors make such determination, the Auction will be closed. Each Qualified Bidder shall be required to confirm that it has not engaged in any collusive behavior with respect to the bidding, the Auction or the Sale. At the Auction, a Qualified Bidder will be permitted to increase its bid only upon demonstrating to the Debtors, in consultation with the Consultation Parties, that it has sufficient, immediately available funds to increase its Deposit by 10% of the increased bid.

The Debtors will then determine and announce which Qualified Bid has been determined to be the Successful Bid. At the same time, the Debtors will identify a *next* highest or otherwise best Qualified Bid and announce that the bidder providing such bid has been selected as the "Backup Bidder" (the Backup Bidder's highest or otherwise best bid, the "Backup Bid"). If a Backup Bidder is identified in accordance with these Bidding Procedures, then the Backup Bid shall remain open until the closure of the Sale to the Successful Bidder.

In selecting the Successful Bid (and in determining the Backup Bid), the Debtors, in consultation with the Consultation Parties, will review each Qualified Bid. Evaluation criteria may include, but are not limited to items such as: (a) the purchase price and the net value (including assumed liabilities and other obligations to be performed or assumed by the bidder) provided by such bid; (b) the claims likely to be created by such bid in relation to other bids; (c) the counterparties to the transaction; (d) the proposed revisions to the Asset Purchase Agreement and the terms of the transaction documents; (e) other factors affecting the speed, certainty and value of the transaction (including any regulatory approvals required to close the transaction); (f) the assets included or excluded from the bid and the transaction costs and risks associated with closing multiple transactions versus a single transaction for all or substantially all of the Acquired Assets; (g) the estimated number of employees of the Debtors that will be offered post closing employment by the bidder and any proposed measures associated with their continued employment; (h) the transition services required from the Debtors post-closing and any related restructuring costs; and (i) the likelihood and timing of consummating the transaction by May 31, 2013. After the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties, may reopen the Auction to auction any remaining Acquired Assets not bid upon by the Successful Bidder.

## VIII. Reservation of Rights

### A. Determination of Highest or Otherwise Best Bid

Subject to prior consultation with the Consultation Parties, the Debtors reserve the right to: (i) determine which bid is the highest or otherwise best bid; and (ii) reject at any time prior to entry of a Bankruptcy Court order approving an offer, without liability, any offer that the Debtors deem to be (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or procedures set forth therein or herein, (c) not a Qualified Bid, or (d) contrary to the best interests of the Debtors and their estates.

The selection of a Successful Bidder shall be made by the Debtors, made in consultation with the Consultation Parties, and subject to approval of the Bankruptcy Court. Economic considerations shall not be the sole criteria upon which the Debtors may base their decision. The presentation of a particular bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of the bid. The Debtors will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing. At or before the Sale Hearing, the Debtors may impose such other terms and conditions on the Qualified Bidders as the Debtors may determine to be in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

### B. Modification of Bidding Procedures

Notwithstanding the foregoing, or anything else in these Bidding Procedures, the Debtors, in consultation with the Consultation Parties, reserve the right to (i) waive compliance with any one or more of the Qualified Bid requirements specified herein, and deem non-complaint bids to be Qualified Bids, (ii) extend the deadlines set forth in these Bidding Procedures and/or adjourn the Auction and/or the Sale Hearing in open court without further

notice, (iii) withdraw any asset(s) (the "<u>Withdrawn Assets</u>") from the Sale at any time prior to or during the Auction to make subsequent attempts to market the same, and to request separate hearing(s) by the Bankruptcy Court to approve the sale(s) of some or all of the Withdrawn Assets, (iv) reject any or all bids if, in the Debtors' reasonable business judgment, no bid is for a fair and adequate price, (v) seek approval of any separate agreement to sell some or all of the Withdrawn Assets at the Sale Hearing, and (vi) modify the Auction procedures and the Bidding Procedures set forth herein, as may be determined to be in the best interests of the Debtors' estates or creditors. The Auction procedures, the Bidding Procedures and all bids are subject to such other terms and conditions as are announced by the Debtors during the course of the Auction. In no event shall the right to credit bid by the DIP Agent and the Hollister Agent recognized herein be eliminated, modified or qualified in any way without the written consent of the DIP Agent and the Hollister Agent.

      C.      <u>Pursuit of Alternative Transactions</u>

Notwithstanding anything provided in these Bidding Procedures or elsewhere, the Debtors, in consultation with the Consultation Parties, reserve the right, at any time prior to the closing of the Sale, including, without limitation, after executing an agreement with any Qualified Bidder, to withdraw the relief requested in the Sale Motion and to pursue an alternative transaction or transactions, or to pursue no transaction at all, with respect to any or all of the Acquired Assets.

      D.      <u>Closing with the Successful Bidder or Backup Bidder</u>

If for any reason the Successful Bidder fails to consummate the purchase of the Acquired Assets, or any part thereof, the Backup Bidder will automatically be deemed to have submitted the highest or best bid and to the extent the Debtors consent, the Debtors and the Backup Bidder are authorized to effect the sale of the Acquired Assets to the Backup Bidder as soon as is commercially reasonable. If such failure to consummate the Sale is the result of a breach by the Successful Bidder, the Debtors reserve the right to seek all available damages from the Successful Bidder, including, but not limited to, with respect to its Deposit.

## IX.    <u>Sale Hearing</u>

The Sale Hearing will be held on **May 2, 2013 at 1:30 p.m. (Pacific Time)** at the United States Bankruptcy Court for the District of Nevada, Foley Federal Building, 300 Las Vegas Blvd South, Las Vegas, Nevada 89101, before the Honorable Mike K. Nakagawa, Chief United States Bankruptcy Judge. The Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment in open court or on the Bankruptcy Court's docket.

The Court shall determine any objections to the assumption and assignment of the Assumed Contracts at the Sale Hearing.

9