Electronically filed on
April 25, 2013

CATHERINE CORTEZ MASTO
Attorney General
CASSANDRA P. JOSEPH
Senior Deputy Attorney General
Nevada Bar No. 9845
Tele: (775) 684-1216
Email: cjoseph@ag.nv.gov
JASMINE K. MEHTA
Deputy Attorney General
Nevada Bar No. 8188
Tele: (775) 684-1217
Email: jmehta@ag.nv.gov
100 North Carson Street
Carson City, Nevada 89701
FAX: (775) 684-1103
*Attorneys for State of Nevada,
Department of Conservation and
Natural Resources, Division of
Environmental Protection*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>RODEO CREEK GOLD INC.<br>　　　Debtor. | Case No. BK-13-50301-mkn<br>Chapter 11 |
| In re:<br>ANTLER PEAK GOLD INC.<br>　　　Debtor. | Case No. BK-13-50302-mkn<br>Chapter 11 |
| In re:<br>HOLLISTER VENTURE CORP.<br>　　　Debtor. | Case No. BK-13-50303-mkn<br>Chapter 11 |
| In re:<br>TOUCHSTONE RESOURCES COMPANY,<br>　　　Debtor. | Case No. BK-13-50304-mkn<br>Chapter 11<br><br>Hearing Date: May 2, 2013<br>Hearing Time: 1:30 p.m. |

///

///

///

Attorney General's Office
100 N. Carson Street
Carson City, Nevada 89701-4717

**OBJECTION OF STATE OF NEVADA, DEPARTMENT OF CONSERVATION
AND NATURAL RESOURCES, DIVISION OF ENVIRONMENTAL PROTECTION
TO PROPOSED SALE OF ASSETS**

The State of Nevada, Department of Conservation and Natural Resources, Division of Environmental Protection ("NDEP"), by and through its attorneys, CATHERINE CORTEZ MASTO, Attorney General, and CASSANDRA P. JOSEPH, Senior Deputy Attorney General, and Jasmine K. Mehta, Deputy Attorney General, hereby objects to the Proposed Sale of Assets (Doc 16) of Debtors insofar as it fails to meet any of the alternative conditions under 11 U.S.C. 363(f).  NDEP seeks to clarify the terms of the Asset Purchase Agreement (Agreement) by requiring, as part of the Agreement or Order Approving the Agreement, a provision related to buyer's obligations for reclamation bonding.

**POINTS AND AUTHORITIES**

**I.    BACKGROUND**

Debtors Rodeo Creek Gold Inc. and Antler Peak Gold Inc.[1] (Debtors) are operators of mines/exploration projects in Nevada, including the Hollister Development Block Project (Hollister Trial Mine) and Esmeralda Mine and Mill Project, for which they have been issued permits by NDEP.  As operators, Debtors are required to obtain permits and furnish "sureties," including bonds or letters of credit, in compliance with NRS 519A.180-.210.  Also as operators, Debtors' obligations include formulation of plans for the reclamation of land affected by their exploration projects or mining.  NRS 519A.230.  The sureties are required in order to secure the reclamation of the land.  NRS 519A.130.  "Reclamation" means:

> actions performed during or after an exploration project or mining operation to shape, stabilize, revegetate or otherwise treat the land in order to return it to a safe, stable condition consistent with the establishment of a productive postmining use of the land and the abandonment of a facility in a manner which ensures the public safety, as well as the encouragement of techniques which minimize the adverse visual effects.

///

///

---

[1] The Debtors in these Chapter 11 cases are: Rodeo Creek Gold Inc., Hollister Venture Corporation, Touchstone Resources Company, and Antler Peak Gold Inc.  For the purposes of this Objection, only the reclamation bond for the Esmeralda Mine and Mill Project is at issue.

NRS 519A.100. Debtors have provided sureties to NDEP in the form of cash collateral in the amount of $2,471,104.00, and owe additional sureties to NDEP in the amount of $1,012,139.00 for the Esmeralda Mine and Mill Project.

By motion pursuant to 11 U.S.C. 363(b) and (f), Debtors propose to sell all or substantially all of their business assets with the proceeds of sale to be paid by the buyer into the bankruptcy estate free and clear of "Interests." Doc 16, p. 7, § 15. "Interests" are defined in the motion as:

> all liens, claims, rights or claims based on any successor or transferee liability, interests, encumbrances, rights, remedies, restrictions, liabilities and contractual commitments of any kind or nature whatsoever, whenever arising, whether at law or in equity.

Doc 16, p. 3.

On March 25, 2013, Debtors sought approval of Amended Bidding Procedures. Doc 218. The Court approved the Amended Bidding Procedures on March 29, 2013. Doc. 286. Pursuant to the terms of the Amended Bidding Procedures, a qualified bid is required to include:

> a duly authorized and executed purchase agreement (a "**Proposed Purchase Agreement**") in the form of the Asset Purchase Agreement specifying the purchase price, expressed in United States Dollars (the "**Proposed Purchase Price**"), together with all exhibits and schedules thereto, and such ancillary agreements as may be required by the bidder with all exhibits and schedules thereto (or term sheets that describe the material terms and provisions of such ancillary agreements) and such ancillary agreements and the proposed orders to approve the Sale by the Bankruptcy Court, as well as copies of such materials marked to show the amendments and modifications to the Asset Purchase Agreement;

Doc 218-1 at Exhibit 1, p. 3.

The Asset Purchase Agreement, Doc 16-9, whose form the Proposed Purchase Agreement is required to follow, contains the following pertinent terms:

> "***Liabilities***" means, as to any Person, adverse claims, liabilities, commitments, responsibilities, and obligations of any kind or nature whatsoever, direct or indirect, absolute or contingent, whether accrued, vested or otherwise, whether known or unknown and

whether or not actually reflected, or required to be reflected, in such Person's balance sheet or other books and records.

"*Reclamation Obligation*" means any and all actions required during, or following cessation of, any exploration, mining or processing activities conducted by or in connection with the Business, or required at or on property utilized by the Business, that is required either by Law or by Permit.

**2.1 Assets to be Acquired**. Subject to the terms and conditions of this Agreement and the entry of the Sale Order, at the Closing, the Sellers shall sell, convey, assign, transfer and deliver to the Buyer, and the Buyer shall purchase, acquire and accept from the Sellers, all of the Sellers' right, title and interest in each and all of the Acquired Assets. "*Acquired Assets*" means all properties, assets

and rights of every nature, tangible and intangible, real or personal, now existing or hereafter acquired, whether or not reflected on the books or financial statements of the Sellers as the same shall exist on the Closing Date that are (a) owned by any Seller, (b) used or held in connection with the ownership, lease, use or operation of the Business and (c) not Excluded Assets, including, as limited by the preceding limitations:
(a) the real property, mining claims and water rights, whether owned or leased, in each case used or held for use in the operation of the Business, listed on Schedule 4.6 (the "*Properties*");
. . .

(f) all Permits used or required for the ownership or operation of the Business, but only to the extent that such Permits are transferable by the Sellers to the Buyer by assignment or otherwise (including those that will pass to the Buyer as successor in title to the Acquired Assets by operation of Law) (the "*Acquired Permits*");
. . .

**2.2 Excluded Assets**. The Buyer does not assume and shall have no right to any asset of the Sellers that is not expressly assumed by the Buyer as an Acquired Asset (collectively, the "*Excluded Assets*"), which Excluded Assets include, for the avoidance of doubt:
(a) all cash and cash equivalents, marketable securities, security entitlements,
instruments and other investments and all bank accounts and securities accounts, including any cash collateral that is collateralizing any letters of credit, or any obligation with respect thereto or which secures any **Reclamation Obligation**;
. . .

**2.3 Liabilities to be Assumed by the Buyer**. Subject to the terms and conditions of this Agreement and on the basis of the representations, warranties, covenants and agreements herein contained, at the Closing, the Sellers shall assign to the Buyer and the Buyer shall assume from the Sellers and pay when due, perform and discharge, in due course, without duplication, the following Liabilities of any Seller or any Affiliate of any Seller (collectively, the "*Assumed Liabilities*"), whether such Liabilities and


> obligations arose or will arise prior to, on or after the Closing Date, including:
> . . .
>
> (b) any **Liabilities** and obligations arising from or relating to accounts payable, environmental matters, **Reclamation Obligations** or permits or other authorizations relating to the ownership or operation of the Business or the Acquired Assets;
> . . .
>
> **2.4 Excluded Liabilities**. The Buyer does not assume any Liability of the Sellers relating to or arising out of any of the following, which shall be retained and remain Liabilities of the Sellers (collectively, the "*Excluded Liabilities*"):
> . . .
>
> (c) **any Liabilities to the extent relating to the Excluded Assets**;
> . . .

Under section 2.2(a) of the Asset Purchase Agreement, Debtors' cash collateral for reclamation obligations are an "excluded asset." In addition, pursuant to section 2.4(c) of the Asset Purchase Agreement, the liability for reclamation is an "excluded liability" to "the extent relating to" the cash collateral. Therefore, it appears that the Seller maintains any cash collateral associated with reclamation obligations, including bonds posted pursuant to NRS 519A.190 and 519A.210, and NAC 519A.350 et seq. Moreover, it appears that the Buyer does not assume obligations related to those "excluded assets." Accordingly, the language of the Asset Purchase Agreement fails to clearly state that the Buyer, in order to comply with Nevada environmental laws, must meet its own reclamation bonding obligations.

## II.   ARGUMENT

### A.   The Asset Purchase Agreement Does Not Meet Any of the Alternative Conditions Specified in 11 USC 363(f)

Subsection (f) of section 363 of title 11 of the United States Code reads as follows:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate only if—
> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or

>such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

The above five conditions are in the disjunctive, meaning Debtors' proposed sale can qualify as a sale free and clear of any other entity's interest if it meets any one of the conditions. *In re Elliot*, 94 B.R. 343 (E.D. Pa. 1988). The sale of Debtors' assets does not come within any of the conditions set forth in section 363(f)(2)-(5) as follows.

1) NDEP has not consented to the sale. 11 USC 363(f)(2).

2) The reclamation obligation is not a lien. 11 USC 363(f)(3).

3) The reclamation is not in bona fide dispute. 11 USC 363(f)(4).

4) It does not appear that Debtors have the ability to satisfy their obligation in the absence of a sale free and clear of the reclamation obligation. 11 USC 363(f)(5).

Likewise, the sale does not come within the condition of section 363(f)(1). Under NRS Chapter 519A and NAC Chapter 519A, any buyer who is also an operator will be liable for sureties required in order to obtain or maintain permits issued by NDEP for mining operations. For example, under NAC 519A.350 and 519A.360, the operator shall provide a surety in an amount sufficient to ensure reclamation of the area affected by operations. Under NAC 519A.215, before a permit may be transferred to a new operator, the operator must furnish "a surety to ensure that reclamation will be completed" as well as evidence that a surety acceptable to the appropriate federal agency has been filed for the portions of the project on public land. NAC 519A.215(1)(a)-(b). The surety can be in the form of a trust fund, a bond, an irrevocable letter of credit, insurance, a corporate guarantee, or some combination of those forms. *See* NAC 519A.350. An application to obtain or transfer a permit must be submitted by the Buyer and accompanied by the appropriate fee. NAC 519.A.225-.227.

As noted above, the proposed Asset Purchase Agreement does not require the Buyer to assume obligations related to "excluded assets," i.e., the reclamation bond. Nor does it clearly require that the Buyer make up the current shortfall in the reclamation bond provided by the Debtors. The Debtors have provided a surety in the form of a cash bond to NDEP in the amount of $2,471,104.00, and owe additional sureties to NDEP in the amount of

Attorney General's Office
100 N. Carson Street
Carson City, Nevada 89701-4717

$1,012,139.00. Debtors have also provided sureties to United States Forest Service (USFS) and Bureau of Land Management (BLM) in the amounts of $388,300 for the Esmeralda Mine and Mill Project and $1,739,300.00 for the Hollister Development Block Project, respectively. Therefore, NDEP objects to the proposed sale and requests this Court to include as part of the Order approving any sale, a provision expressly stating the obligations of the Buyer with respect to reclamation bonds. Specifically, NDEP requests that any sale agreement or order approving the sale agreement must contain a provision stating that nothing in the sale agreement shall be construed to limit the Buyer's obligations to comply with Nevada reclamation laws, including compliance with requirements to provide sureties under NRS Chapter 519A. This includes gaining approval from NDEP as the new applicant or transferee. NAC 519A.215; NAC 519A.350. Further, the existing bond will not be returned until the applicant or transferee has been approved. NAC 519A.385(2)(d).

### III. CONCLUSION

It is respectfully submitted that this Court require as part of the sale agreement or in an Order approving a sale agreement, a provision stating that approval of the sale does not affect any duty of the Buyer, as operator, to comply with applicable reclamation obligations.

Respectfully submitted this 25th day of April, 2013.

CATHERINE CORTEZ MASTO
Attorney General

By: /s/ Jasmine K. Mehta
CASSANDRA P. JOSEPH
Senior Deputy Attorney General
Nevada State Bar No. 9845
Tele: (775) 684-1216
JASMINE K. MEHTA
Deputy Attorney General
Nevada State Bar No. 8188
Tele: (775) 684-1217
100 North Carson Street
Carson City, Nevada 89701
*Attorneys for State of Nevada, Department of Conservation and Natural Resources, Division of Environmental Protection*