1   Jessica C.K. Boelter (IL SBN 6277801)         Donald A. Lattin (NV SBN 693)
    Thomas A. Labuda, Jr. (IL SBN 6225401)        Christopher D. Jaime (NV SBN 4640)
2   Matthew E. Linder (IL SBN 6309552)            MAUPIN, COX & LEGOY, P.C.
    SIDLEY AUSTIN LLP                             4785 Caughlin Parkway
3   One South Dearborn Street                     Reno, Nevada 89519
    Chicago, Illinois 60603                       Telephone:  (775) 827-2000
4   Telephone:  (312) 853-7000                    Facsimile:  (775) 827-2185
    Facsimile:  (312) 853-7036                    dlattin@mclrenolaw.com
5                                                 cjaime@mclrenolaw.com
6   Counsel for Debtors and Debtors in Possession
                                                  Nevada Counsel for
7                                                 Debtors and Debtors in Possession

8                   UNITED STATES BANKRUPTCY COURT
9                        DISTRICT OF NEVADA

10
11  In re:                                        Chapter 11

12  RODEO CREEK GOLD INC.                         Case No. BK-13-50301 (MKN)

13    ☐ Affects this Debtor                       Jointly Administered
      ☒ Affects all Debtors
14    ☐ Affects Antler Peak Gold Inc.             **NOTICE OF FILING OF**
      ☐ Affects Hollister Venture Corporation     **LIQUIDATING TRUST AND BINDING**
15    ☐ Affects Touchstone Resources Company      **CLAIMS MEDIATION AGREEMENTS**
                                                  **IN CONNECTION WITH THE**
16                                                **DEBTORS' MOTION TO DISMISS**
                                                  **CHAPTER 11 CASES AND GRANTING**
17                                                **RELATED RELIEF**

18
                                                  Hearing Date:    July 11, 2013
19                                                Hearing Time:    1:30 P.M. (PT)
                                                  Place:           300 Las Vegas Blvd.
20                                                                 Las Vegas, NV 89101

21

22          NOTICE IS HEREBY GIVEN, that on June 12, 2013, the Debtors filed the
23
    *Motion to Dismiss Chapter 11 Cases and Granting Related Relief* [Docket No. 541] (the
24
    "Motion").[1]  As set forth in the Motion, the Debtors propose to transfer certain proceeds of the
25
    Agent's collateral, including the GUC Trust Fund, to a liquidating trust (the "Trust") for the
26
    exclusive benefit of general unsecured creditors and the Agent.  The Motion provides that the
27

28
    _____

    [1] Capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Motion.

actions of the trustee will be governed by a certain liquidating trust agreement (the "Liquidating Trust Agreement"), which the Debtors must file no later than fourteen (14) days prior to the hearing on the Motion.  The Liquidating Trust Agreement is attached hereto as Exhibit A.

NOTICE IS FURTHER GIVEN, that the Motion requests entry of an order providing, among other things, that any holder of a general unsecured claim, in order to receive its pro rata share of distributions from the GUC Trust Fund, must agree to participate in and be bound by certain claims-resolutions procedures.  A form of Liquidating Trust Binding Claims Mediation Agreement is attached hereto as Exhibit B.

NOTICE IS FURTHER GIVEN, that a hearing to consider entry of an order approving the relief requested in the Motion will be held before the Court on July 11, 2013 at 1:30 p.m. (PT).

NOTICE IS FURTHER GIVEN, that the Debtors intend to request at the hearing on the Motion that the Court enter an order that, among other things, (i) authorizes the Debtors to enter into the Liquidating Trust Agreement and to take all actions necessary to effectuate the terms of the Liquidating Trust Agreement and (ii) requires any holder of a general unsecured claim, in order to receive its pro rata share of distributions from the GUC Trust Fund, to enter into the Liquidating Trust Binding Claims Mediation Agreement.

DATED: June 26, 2013                              Respectfully submitted,

By   _/s/    Christopher D. Jaime_____
Donald A. Lattin, NV State Bar # 693
Christopher D. Jaime, NV State Bar # 4640
MAUPIN, COX & LEGOY, P.C.
4785 Caughlin Parkway
Reno, Nevada 89519
dlattin@mclrenolaw.com
cjaime@mclrenolaw.com

Nevada Counsel for Debtors and Debtors in Possession

Jessica C.K. Boelter, IL State Bar # 6277801
Thomas A. Labuda, Jr., IL State Bar # 6225401
Matthew E. Linder, IL State Bar # 6309552
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603

Counsel for Debtors and Debtors in Possession

# EXHIBIT A

**LIQUIDATING TRUST AGREEMENT**

## LIQUDATING TRUST AGREEMENT

This Creditor Trust Agreement (the "Agreement") dated as of June __, 2013 is by and between Rodeo Creek Gold, Inc., Hollister Venture Corporation, Touchstone Resources Company, Antler Peak Gold Inc. (the "Debtors"), and Development Specialists, Inc. as "Liquidating Trustee" under the terms of the *Order Granting Debtors' Motion to Dismiss Chapter 11 Case and Granting Related Relief* ("Dismissal Order") entered in the chapter 11 bankruptcy cases currently pending in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") with a caption of In re Rodeo Creek Gold, Inc., et al., Case No. bk-13-50301 (MKN) (Jointly Administered) (the "Bankruptcy Case"), to implement the Trust for the benefit of the Beneficiaries.

## WITNESSETH

WHEREAS, the Trust is created on behalf, and for the sole benefit, of the Beneficiaries pursuant to the Dismissal Order;

WHEREAS, the Trust is established for the purpose of collecting, holding, administering, distributing and liquidating the Trust Assets for the benefit of the Beneficiaries in accordance with the terms of this Agreement and the Dismissal Order and with no objective to continue or engage in the conduct of a trade or business, except the liquidation and distribution of Trust Assets pursuant to this Agreement and the Dismissal Order and to effect the dissolution of the Debtors;

WHEREAS, the Trustee, the Trust and the Beneficiaries shall treat, for all federal income tax purposes, the transfer of the Trust Assets to the Trust as a transfer of the Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed General Unsecured Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for the beneficial

interests herein, and to treat the Beneficiaries as the grantors and owners of the Trust for federal income tax purposes;

WHEREAS, the Trust is intended to be treated as a grantor trust for federal income tax purposes within the meaning of Sections 671-677 of the Internal Revenue Code of 1986 (as amended, the "IRC");

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein and in the Dismissal Order, the Debtor and the Trustee agree as follows:

## ARTICLE I

## DEFINITIONS AND INTERPRETATIONS

1.1    Definitions

1.1.1    "Allowed General Unsecured Claims" shall mean (i) each General Unsecured Claim that was scheduled on Schedule F in a liquidated amount that was not designated as contingent, unliquidated, or disputed and for which no proof of claim was filed by the Bar Date; (ii) each General Unsecured Claim for which a proof of claim was timely filed by the Bar Date to which no party in interest has objected and to which amount the Trustee consents; (iii) each General Unsecured Claim for which a proof of claim was timely filed by the Bar Date, which amount the Trustee disagrees with, but was resolved through agreement of the parties or through the Mediation Process.

1.1.2    "Bankruptcy Case" shall have the meaning set forth in the recital.

1.1.3    "Bankruptcy Code" means title 11 of the United States Code sections 101 et seq. as now in effect or hereafter amended.

1.1.4    "Bankruptcy Court" shall have the meaning set forth in the recital.

-2-

1.1.5  "Bar Date" means May 10, 2013 (which was the date previously set by the Bankruptcy Court for the holders of General Unsecured Claims to file proofs of claims in the Bankruptcy Case).

1.1.6  "Beneficiaries" shall mean those holders of Allowed General Unsecured Claims who (i) agree to participate in the Mediation Process by returning an executed version of the binding mediation agreement attached as Exhibit A hereto; and (ii) respond within the timeframe requested by the Trust to the Trust's request for evidence of a tax identification or social security number through submission of a W-9 or other similar Internal Revenue Code form under penalty of perjury.

1.1.7  "Credit Suisse" shall mean Credit Suisse AG, in its capacity as agent with respect to the Debtors' prepetition and postpetition credit facilities.

1.1.8  "Creditors' Committee" shall mean the Official Committee of Unsecured Creditors appointed in the Bankruptcy case in effect on the date of entry of the Dismissal Order.

1.1.9  "DIP Order" means the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 552 and Fed. R. Bankr. P. Rule 4001(B) and (C) (I) Authorizing The Debtors to (A) Obtain Postpetition Financing, (B) Use of Cash Collateral, and (C) Grant Liens, Including Priming Liens, and Superpriority Claims, (II) Granting Adequate Protection, (III) Scheduling A Final Hearing and (IV) Granting Related Relief* entered in the Bankruptcy Case.

1.1.10  "D&O Claims" shall mean any claims or causes of action that the Debtors may have against the Debtors' current and former directors and officers to the extent not previously released under the Dismissal Order.

1.1.11  "Dismissal Order" shall have the meaning set forth in the recital.

-3-

1.1.12  "Effective Date" shall have the meaning ascribed to it in Section 9.1 herein.

1.1.13  "General Unsecured Claim" shall mean a claim against a Debtor that is not secured, entitled to priority or administrative claim status under the Bankruptcy Code, an intercompany claim, or an equity interest.

1.1.14  "Mediation Process" shall mean that binding mediation process set forth in the mediation agreement attached as Exhibit A hereto.

1.1.15  "Net Distributable Trust Assets" shall mean the amount of Trust Assets available for distribution to Beneficiaries after paying or reserving for all costs of the Trust.

1.1.16  "Schedule F" shall mean the Schedule of Creditors Holding Unsecured Non Priority Claims filed by the Debtors in the Bankruptcy Case, as amended from time to time.

1.1.17  "Trust" shall mean this Liquidating Trust established pursuant to the terms of this Agreement and the Dismissal Order.

1.1.18  "Trust Assets" shall mean:  (i) cash in the amount of $1,468,500 transferred to the Trust by the Debtors pursuant to the Dismissal Order; (ii) the D&O Claims subject to the assignment to Credit Suisse and agreement for sharing of the proceeds with Credit Suisse set forth in the Dismissal Order; (iii) all rights and defenses with respect to the General Unsecured Claims of the Debtors existing as of the date of entry of the Dismissal Order; and (iv) any of the Debtors' books and records pertaining to (i) through (iii) above and as may be necessary to effectuate the dissolution of the Debtors.

1.1.19  "Trustee" shall mean Development Specialists, Inc. and any successor or replacement trustee.

## ARTICLE  II

## DECLARATION OF TRUST

2.1     <u>Purpose of Trust</u>.  The Debtor and the Trustee, pursuant to the Dismissal Order, hereby create the Trust for the primary purpose of (i) collecting, holding, administering, distributing and liquidating the Trust Assets for the benefit of the Beneficiaries in accordance with the terms of this Agreement and the Dismissal Order; (ii) administering the collection, prosecution, settlement, and/or abandonment of the Trust Assets; and (iii) effecting the corporate wind-down and dissolution of the Debtors.  The activities of the Trust shall be limited to those activities set forth in this Agreement and as otherwise contemplated by the Dismissal Order.

2.2     <u>Trust Name</u>.  The name of the Trust shall be Rodeo Creek Liquidating Trust.

2.3     <u>Transfer of Trust Assets.</u>

A.     As of the Effective Date, the Debtors grant, release, assign, transfer, convey and deliver, on behalf of the Beneficiaries, their interests in the Trust Assets to the Trustee in trust for the Beneficiaries to be applied as specified in this Agreement and the Dismissal Order.  The Debtors shall from time to time as and when reasonably requested by the Trustee execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Debtors shall take or cause to be taken such further action as the Trustee may reasonably deem necessary or appropriate, to vest or perfect in or confirm to the Trustee title to and possession of the Trust Assets.

B.     All of the Debtors' right, title and interest in and to the Trust Assets are automatically vested in the Trust, free and clear of all liens, claims, encumbrances and other interests, and such transfer is on behalf of the Beneficiaries (whether or not such General Unsecured Claims are Allowed General Unsecured Claims on or after the date of the Dismissal

-5-

Order) to establish the Trust, provided however that the liens of Credit Suisse on the D&O

Claims shall attach to the proceeds thereof.  To the extent any law or regulation prohibits the

transfer of ownership of any of the Trust Assets from the Debtors to the Trustee and such law is

not superseded by the Bankruptcy Code, the Trustee's interest in such Trust Assets shall be a lien

upon and security interest in such assets, for the sole use and purposes set forth in Section 2.1,

and this Agreement shall be deemed a security agreement granting such lien and security interest

without the need to file financing statements or mortgages.  By executing this Agreement, the

Trustee hereby accepts all of such property as Trust Assets, to be held in trust for the

Beneficiaries, subject to the terms of this Agreement.

> C.      For all federal income tax purposes, the Debtors, the Beneficiaries,

the Trustee and the Trust shall treat this Trust as a liquidating trust within the meaning of

Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45,

1994-2 C.B. 124 and transfer of the Trust Assets to the Trust shall be treated as a transfer of the

Trust Assets by the Debtors to the Beneficiaries in satisfaction of their allowed claims, followed

by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for their beneficial

interests in the Trust.  The Beneficiaries shall be treated as the grantors and owners of the Trust

for federal income tax purposes.

2.4     Valuation of Trust Assets.  Prior to the due date for filing of the Trust's first

federal income tax return (taking into account applicable tax filing extensions), the Trustee shall

(a) determine the fair market value of the Trust Assets as of the Effective Date, based on his

good faith determination, and (b) establish appropriate means to apprise the Beneficiaries of such

valuation.  The valuation shall be used consistently by all parties (including, without limitation,

the Debtor, the Trust, the Trustee and the Beneficiaries) for all federal income tax purposes.

DOCS_LA:268274.3 75293/002

# ARTICLE  III

## ADMINISTRATION OF THE TRUST

3.1     <u>Rights, Powers and Privileges</u>.  The Trustee shall have the rights, powers and privileges expressly provided in this Agreement or in the Dismissal Order.  The Trustee shall not take any action that is inconsistent with this Agreement or the Dismissal Order.  Without limiting the foregoing, the Trustee shall have the power to take any and all actions consistent with the terms hereof in addition to the powers granted in the Dismissal Order, and any powers reasonably incidental thereto, which the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the liquidating purpose of the Trust, including, without limitation, the following:

A.     administer the collection, prosecution, settlement, and/or abandonment of the Trust Assets;

B.     make interim and final distributions to the Beneficiaries of the Net Distributable Trust Assets;

C.     file suit or any appropriate motion for relief in the Bankruptcy Court or in any other court of competent jurisdiction to resolve any disagreement, conflict, dispute, or ambiguity in connection with the exercise of its rights, power, or duties;

D.     hold legal title to any and all rights of the Debtors and the Beneficiaries that constitute Trust Assets;

E.     in reliance upon the Debtors' schedules and the official claims register (the "<u>Register</u>") maintained in the chapter 11 cases, maintain on the Trustee's books and records a register evidencing the beneficial interests in the Trust held by each Beneficiary;

-7-

F.    protect and enforce the rights to the Trust Assets by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

G.    make all distributions to the Beneficiaries provided for in, or contemplated by this Agreement;

H.    open and maintain bank accounts on behalf of or in the name of the Trust;

I.    make all tax withholdings, file tax information returns, make tax elections by and on behalf of the Trust and file tax returns for the Trust as a grantor trust under IRC Section 671 and Treasury Income Tax Regulation Section 1.671-4 pursuant to and in accordance with the Dismissal Order and Article 7.9 hereof;

J.    send annually to each Beneficiary a separate statement stating the Beneficiary's share of the Trust's income, gain, loss, deduction or credit, and instruct all such Beneficiaries to report such items on their federal tax returns;

K.    establish such reserves for taxes, assessments and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust;

L.    pay all expenses of the Trust and all costs relating to the administration of the Trust Assets;

M.    retain and pay third parties and professionals pursuant to Article 3.2 of this Trust;

N.    carry insurance coverage;

-8-

O.      exercise all powers provided under the Dismissal Order and this Agreement, including the right to object to and settle objections to all General Unsecured Claims;

P.      file tax returns on behalf of the Debtors;

Q.      wind-down the operations of the Debtors including, without limitation, filing any necessary documents with the State of Nevada to effect a dissolution of the Debtors; and

R.      coordinate with and assist the PBGC with the transition of the pension plan;

S.      invest any moneys held as part of the Trust Assets in accordance with the terms of Article 3.3 hereof.

3.2     <u>Agents and Professionals</u>.  The Trustee may, but shall not be required to, consult with and retain attorneys, accountants, appraisers, or other parties deemed by the Trustee to have qualifications necessary to assist in the proper administration of the Trust, including professionals previously retained by the Creditors' Committee.  The Trustee may pay the reasonable salaries, fees and expenses of such persons out of the Trust Assets in the ordinary course of business.

3.3     <u>Investment and Safekeeping of Trust Assets</u>.  All Trust Assets and all proceeds thereof, subject to payment of the Trust's expenses, shall, until distributed or paid over as provided herein and in the Dismissal Order, be held in trust for the Beneficiaries.  The Trustee shall be under no liability for interest or producing income on any moneys received by it hereunder and held for distribution or payment to the Beneficiaries.  Except as otherwise provided by the Dismissal Order, the powers of the Trustee to invest any moneys held by the

-9-

Trust, other than those powers reasonably necessary to maintain the value of the assets and to

further the Trust's liquidating purpose, shall be limited to powers to invest in demand and time

deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other

temporary liquid investments, such as treasury bills.

3.4    <u>Consultation</u>.  The Trustee shall make reasonable efforts to consult with

Beneficiaries upon request.


**ARTICLE  IV**

**DISTRIBUTIONS FROM THE TRUST**

4.1    <u>Timing of Distributions</u>.  Distributions to the Beneficiaries will be made from the

Trust in the Trustee's sole discretion.

4.2    <u>Withholding from Distributions</u>.  The Trustee may withhold from amounts

distributable to any Beneficiary any and all amounts, determined in the Trustee's reasonable sole

discretion, to be required by any law, regulation, rule, ruling, directive or other governmental

requirement.

4.3    <u>Undeliverable Distributions</u>.  If a distribution is returned to the Trustee as

undeliverable, such undeliverable distributions shall be held for a period of thirty (30) days and if

the Beneficiary does not contact the Trustee and provide sufficient evidence of a new address in

writing, then the distribution will be deemed waived and returned to the Trust to be distributed as

Trust Assets.

4.4    <u>Unclaimed Distributions</u>.  If a distribution is unclaimed for a period of forty-five

(45) days after issuance, the distribution will be deemed waived and forfeited to the Trust to be

-10-

distributed as Trust Assets or if no further distribution will be made, to be donated to a qualified

charitable organization of the Trustee's choosing.

4.5     Priorities of Distribution.  The Trustee must pay the operating expenses of the

Trust before approving distributions to or for the benefit of the Beneficiaries.


## ARTICLE  V

## BENEFICIARIES

5.1     Interest Beneficial Only.  The ownership of a beneficial interest in the Trust shall

not entitle any Beneficiary to any title in or to the Trust Assets or to any right to call for a

partition or division of such assets or to require an accounting, except as specifically provided

herein.

5.2     Ownership of Beneficial Interests Hereunder.  Each Beneficiary shall own a

beneficial interest herein equal in proportion to the pro rata share of such Beneficiary's Allowed

General Unsecured Claim.

5.3     Evidence of Beneficial Interest.  Ownership of a beneficial interest in the Trust

Assets shall not be evidenced by any certificate, security, or receipt or in any other form or

manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

5.4     Delivery of Distributions.  The Trustee shall make distributions to Beneficiaries at

the address set forth on the Beneficiary's proof of claim, if any, or on the Debtors' schedules

unless notified in writing otherwise.

DOCS_LA:268274.3 75293/002

# ARTICLE VI

## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     <u>Parties Dealing With the Trustee</u>.  In the absence of actual knowledge to the contrary, any person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Trust Assets and as the Debtors' representative with respect to the final tax returns and corporate dissolution documents for the Debtors.  There is no obligation on any person dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee with respect to the Trust or the Trust Assets.

6.2     <u>Limitation of Trustee's Liability</u>.  Anything herein to the contrary notwithstanding, in exercising its rights, duties and obligations under this Trust, the Trustee shall act in good faith and use its best efforts to properly manage the Trust and the Trust Assets and protect the interests of all the Beneficiaries; but the Trustee shall not incur any responsibility or liability by reason of any error of law or of any matter or thing done or suffered or omitted to be done under this Agreement, except to the extent that the same constitutes fraud, gross negligence or willful misconduct by the Trustee.

6.3     <u>Indemnification</u>. The Trustee and its firm, partners, officers, directors, employees, professionals, advisors, attorneys, financial advisors, investment bankers or agents (collectively, the "<u>Indemnified Parties</u>" and each an "<u>Indemnified Party</u>") shall be indemnified by and receive reimbursement from the Trust for each and every loss, liability, expense (including counsel fees) or damage of any kind, type or nature, which the Indemnified Parties may incur or sustain in the exercise and performance of any of the Trustee's powers and duties under this Agreement, or in the rendering of services by Indemnified Party to the Trustee, to the full extent permitted by

-12-

applicable law, except if such loss, liability, expense or damage is finally determined by a court of competent jurisdiction to result from the Trustee's or an Indemnified Party's fraud, gross negligence or willful misconduct.  The amounts necessary for such indemnification and reimbursement shall be paid by the Trustee out of the Trust Assets only.  The Trustee shall not be personally liable for the payment of any Trust expense or other liability of the Trust, and no person shall look to the Indemnified Parties personally for the payment of any such expense or liability. This indemnification shall survive the death, dissolution, resignation or removal, as may be applicable, of the Trustee, or the termination of the Trust, and shall inure to the benefit of the Trustee's and the Indemnified Party's heirs and assigns.

## ARTICLE  VII

### SELECTION, REMOVAL AND COMPENSATION OF TRUSTEE

7.1     <u>Initial Trustee</u>.  The initial Trustee shall be Development Specialists, Inc. Geoffrey L. Berman will have primary responsibility within Development Specialists, Inc. for the administration of the Trust.

7.2     <u>Term of Service</u>.  The Trustee shall serve until (a) the completion of all the Trustee's duties, responsibilities and obligations under this Agreement and the Dismissal Order; (b) termination of the Trust in accordance with the terms of this Agreement and the Dismissal Order; or (c) the Trustee's resignation, death, incapacity or removal.

7.3     <u>Removal of Trustee</u>.  Any person serving as Trustee may be removed by order of the Bankruptcy Court at any time for cause, and any Beneficiary shall have the standing and right to seek such relief from the Bankruptcy Court.

-13-

7.4     <u>Resignation of Trustee</u>.  The Trustee may resign at any time.  In the event of a resignation, the resigning Trustee shall render to the Beneficiaries a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Trustee.  The resignation shall be effective on the later of (i) the date specified in the notice delivered to the former counsel and members of the Creditors' Committee; (ii) the date that is thirty days (30) after the date such notice is delivered; or (iii) the date the accounting described in the preceding sentence is transmitted to the Beneficiaries by first class mail, postage pre-paid.  In the event of any resignation or termination of the initial Trustee, the Trustee shall be entitled to any fees and expenses due for services rendered through the date its resignation becomes effective.

7.5     <u>Appointment of Successor Trustee</u>.  Upon the resignation, death, incapacity, or removal of a Trustee, counsel to the former Creditors' Committee upon consultation with the former members of the Creditors' Committee (as constituted on the Dismissal Order date) shall have the right to seek appointment of a successor Trustee.  Any successor Trustee so appointed shall consent to and accept in writing the terms of this Agreement and agree that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Trustee and all of his heirs and legal and personal representatives, successors or assigns.

7.6     <u>Powers and Duties of Successor Trustee</u>.  A successor Trustee shall have all the rights, privileges, powers, and duties of his predecessor under this Agreement and the Dismissal Order.

7.7     <u>Trust Continuance</u>.  The resignation, death, incapacitation or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

-14-

7.8     <u>Compensation of the Trustee and Costs of Administration</u>.  The Trustee shall receive reasonable compensation on an hourly rate basis consistent with the rates normally charged by the Trustee.  All costs, expenses, and obligations incurred by the Trustee (or professionals who may be employed by the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Trustee from the Trust Assets prior to any distribution to the Beneficiaries.

7.9     <u>Annual Reporting and Filing Requirements</u>.

A.     The Trustee shall furnish a report to the Beneficiaries on a yearly basis of all assets received by the Trust, all assets disbursed to Beneficiaries, and all assets held by the Trust during the preceding calendar year, which report may be the beneficiary notice required to be provided under the Internal Revenue Code.

B.     Pursuant to and in accordance with the terms of the Dismissal Order and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Income Tax Regulation Section 1.671-4(a).

C.     The Trustee shall file 2012 and 2013 tax returns on behalf of the Debtors as well as documentation to effectuate the corporate dissolution of the Debtors.

**ARTICLE  VIII**

**MAINTENANCE OF RECORDS**

8.1     The Trustee shall maintain books and records containing a description of all property from time to time constituting the Trust Assets, the management thereof, all transactions undertaken by the Trustee, all expenses incurred by or on behalf of the Trust, and all

-15-

disbursements.  Said books and records shall be open to inspection by any Beneficiary at any reasonable time at the offices of the Trustee, or such other location identified by the Trustee, during normal business hours.

## ARTICLE  IX

## DURATION OF TRUST

9.1     <u>Duration</u>.  The Trust shall become effective upon entry of the Dismissal Order, execution of this Agreement by the parties hereto, and transfer of the Trust Assets to the Trust (the "Effective Date").  Thereupon, the Trust and the provisions hereof shall remain and continue in full force and effect until the Trust is terminated.

9.2     <u>Termination Upon Distribution of All Trust Assets</u>.  The Trust shall terminate when the Trustee has performed all of its duties under the Dismissal Order and this Agreement, including the final distribution of all the Net Distributable Trust Assets to the Beneficiaries, which date shall not be more than five (5) years after the Effective Date of this Agreement; <u>provided</u>, <u>however</u>, that the Trust may remain open longer in the discretion of the Trustee so long as it may be necessary to liquidate and distribute all of the Trust's property.  Upon termination of the Trust, the Trustee shall have no further responsibility in connection therewith.

## ARTICLE  X

## MISCELLANEOUS

10.1     <u>Limitation on Transferability</u>.  It is understood and agreed that the beneficial interests in the Trust shall be non-assignable during the term of this Agreement except by operation of law.  An assignment by operation of law shall not be effective unless and until appropriate notification and proof thereof is submitted to the Trustee, and the Trustee may

-16-

continue to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law.  The Trustee may rely upon such proof without the requirement of any further investigation.

10.2    <u>Notices</u>.  All notices to be given to Beneficiaries may be given by ordinary mail at the addresses appearing on the proof of claim filed by the Beneficiary or on the Debtors' Schedule F.  Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing as follows:

> If to the Trust:
>
> Development Specialists, Inc.
> Attn: Geoffrey L. Berman
> Wells Fargo Center
> 333 South Grand Avenue Suite 4070
> Los Angeles, California 90071-1544
> gberman@dsi.biz

or to such other address as may from time to time be provided in written notice by the Trustee.

10.3    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada.

10.4    <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

10.5    <u>Particular Words</u>.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

10.6    <u>No execution</u>.  All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no

-17-

Beneficiary or any other person can execute upon, garnish or attach the Trust Assets in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court.

10.7    <u>Amendment</u>.  This Agreement may be amended only by order of the Bankruptcy Court.

10.8    <u>Severability</u>.  If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

10.9    <u>Counterparts</u>.  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

DOCS_LA:268274.3 75293/002

IN WITNESS WHEREOF, the parties have executed this Agreement (or are deemed to have so executed this Agreement) as of the day and year written above.

RODEO CREEK GOLD INC., ANTLER
PEAK GOLD INC., HOLLISTER VENTURE
CORPORATION AND TOUCHSTONE
RESOURCES COMPANY


By: _____
Name:
Title:

TRUSTEE


By:_____
Name: Geoffrey L. Berman
Title: Senior Vice President
Development Specialists, Inc.

-19-

# <u>EXHIBIT B</u>

**LIQUIDATING TRUST**
**BINDING CLAIMS MEDIATION AGREEMENT**

**Rodeo Creek Liquidating Trust Binding Claims Mediation Agreement**

This Binding Claims Mediation Agreement ("Mediation Agreement") is entered into between the Liquidating Trustee (the "Trustee") of the Rodeo Creek Liquidating Trust (the "Trust") on the one hand, and _____ (the "Claimant") on the other hand.  Terms not defined herein shall be as defined in the Liquidating Trust Agreement (the "Trust Agreement") between the Trustee and the Debtors.

WHEREAS, on ____, 2013, the Trust was established pursuant to the Dismissal Order;

WHEREAS, the Trust is holding the Trust Assets for the benefit of the Beneficiaries;

WHEREAS, in order to qualify as a Beneficiary of the Trust pursuant to the Trust Agreement, holders of General Unsecured Claims must execute this Mediation Agreement;

WHEREAS, in order for holders of General Unsecured Claims to receive any distributions from the Trust Assets, their claims must be Allowed General Unsecured Claims;

WHEREAS, after entry of the Dismissal Order, the Bankruptcy Case will be closed;

WHEREAS, the goal of this Mediation Agreement is to avoid the significant economic burdens and delay that would be involved in formal litigation and to arrive at an agreed upon, liquidated, Allowed General Unsecured Claim amount for the Claimant if the parties cannot agree on an amount between themselves;

NOW, THEREFORE, in consideration of the promises and mutual covenants contained herein, the Trustee and the Claimant agree as follows:

## ARTICLE I

### Pre-Mediation

1.1  If the Trustee disagrees with the amount set forth on the Claimant's proof of claim, the Trustee and the Claimant shall attempt to amicably reach agreement on the Allowed General Unsecured Claim amount.

1.2  Claimant agrees to timely respond to the Trustee's request for information regarding Claimant's General Unsecured Claim.

1.3  If after discussion in good faith, the parties fail to reach agreement as to the amount of an Allowed General Unsecured Claim, then in the sole discretion of the Trustee, the Trustee shall be entitled to institute mediation proceedings in order to resolve the Allowed General Unsecured Claim amount by serving on Claimant the attached Notice of Mediation.

## ARTICLE II

### Mediation

**A.  Costs of Mediation**

2.1  While mediation under the procedures set forth below will be far less expensive than traditional litigation, there are nevertheless associated costs, including mediators' fees and expenses, costs attendant to the mediation, such as phone and/or video-teleconferencing costs, and reasonable travel and lodging costs of the mediator.

2.2  Each party agrees to pay the costs of its own side to appear and prepare for the mediation, including counsel fees.  Each party agrees to pay 50% of the costs of the Mediator's fees and expenses.

**B.      Selection of Mediator and Alternate Mediator; Objection to Mediator**

2.3  The Trustee will select a Mediator and an Alternate Mediator from qualified professionals who have volunteered and been chosen to serve as mediators in bankruptcy cases, adversary proceedings and other disputes.  The Mediator will mediate the allowance of the General Unsecured Claim, unless the Claimant objects to the Mediator for any reason (including a perceived conflict of interest), in which case the Alternate Mediator shall mediate that General Unsecured Claim.  If the Claimant has any objection to the Mediator or Alternate Mediator, the basis for such objection shall be set forth in writing and served on the Trustee and Mediator within 10 business days of receipt of the notification that identifies the Mediator and Alternate Mediator.

**C.      The Pre-Mediation Conference**

2.4  Promptly, but no later than twenty-one (21) calendar days after mailing of the Notice of Mediation, the Mediator shall conduct a telephonic conference with counsel for the Trustee and the Claimant or their counsel to discuss (1) fixing a convenient date and place for the mediation conference, (2) the procedures that will be followed during the mediation conference, (3) who shall attend the mediation conference on behalf of each party, (4) what material or exhibits should be provided to the Mediator before the mediation conference, and (5) any matters that it would be helpful to have the parties address in their written mediation statements.

**F.      Notice of Time and Place of Mediation Conference**

2.5  Within fourteen (14) calendar days of the completion of the Pre-Mediation Conference described in the preceding paragraph, the mediator shall give notice to the parties of the date, time and place for the mediation conference.

2.6  The mediation conference shall commence no later than sixty (60) calendar days following mailing of the Notice of Mediation, and shall be held in a suitable geographic location convenient and agreeable to the parties and the mediator (considering the residence of the counsel and parties who will be in attendance at the mediation conference), and at a neutral

DOCS_LA:268443.3 75293/002

setting, such as the mediator's offices, a hotel conference room, or the offices of a local court reporting agency.

2.7  If the Mediator, counsel for the Trustee and the Claimant are unable to reach agreement as to a convenient location for the mediation conference, then the Mediator shall unilaterally designate a location for the mediation conference.  In such circumstances, counsel and the parties are free to attend the mediation conference in person, or appear telephonically or by videoconference, if available.

### G.    Mediation Conference Statements.

2.8  The Trustee and the Claimant shall each submit a written mediation statement directly to the Mediator and exchange with each other the mediation statement, no less than five (5) court days prior to the date of the mediation conference, unless the Mediator gives some other instructions.

2.9  The mediation statement shall not exceed ten (10) pages, excluding exhibits and attachments.  Mediation statements shall be confidential.

2.10  Each mediation statement must:

1.    Identify the person(s), in addition to counsel, who will attend the Mediation Conference;

2.    Describe briefly the substance of, and basis for, the General Unsecured Claim;

3.    Address any legal or factual issue(s) that might appreciably reduce the scope of the dispute or contribute significantly to reaching agreement as to a liquidated value for the General Unsecured Claim;

4.    Identify the discovery that could contribute most to preparing the parties for meaningful discussions;

5.    Attach any reports of experts or other materials pertinent to the General Unsecured Claim;

6.    Set forth the history of past settlement discussions, including disclosure of any prior and any presently outstanding offers and demands;

7.    Set forth the amount that the party submitting the mediation statement would agree to accept as an agreed upon, liquidated and allowed claim, with a waiver by the Claimant of the right to pursue the Trust for any unpaid amounts.

2.11  Each party may, if it wishes, also submit directly to the Mediator, for his or her eyes only, a separate confidential Mediation statement describing any additional interests, considerations, or matters that the party would like the Mediator to understand before the mediation conference begins. Such additional Mediation statements shall not exceed five (5) pages, excluding exhibits and attachments.

3

**H.    Attendance and Participation at Mediation.**

2.12  Unless attendance by telephone or videoconference is permitted in the Mediator's discretion, or in the case of a mediation conference being unilaterally scheduled to be held over the objection of a Claimant, in which case attendance by telephone or videoconference is permitted, counsel for the Trustee and the Claimant shall each personally attend the mediation conference and any subsequent session(s) of that conference, unless excused by the Mediator, and all individual Claimants, and representatives with authority to negotiate and to settle the claim, shall personally attend the Mediation Conference and any subsequent session(s) of that conference, unless excused by the Mediator.  Each party shall come prepared to discuss all liability issues, all damage issues, and the position of the party relative to settlement, in detail and in good faith.

2.13  The mediation conference shall proceed informally.  No discovery shall be taken or permitted in connection with the mediation conference without the Mediator's express approval.  The rules of evidence shall not apply.  There shall be no formal examination or cross-examination of witnesses.  With the goal of reaching an agreement as to the liquidated amount of the General Unsecured Claim, the Mediator shall have the broadest possible discretion to conduct the mediation conference in the manner and style of the Mediator's choosing.

**I.    Procedure Upon Completion of Mediation Conference**

2.14  If the parties have reached an agreement regarding the liquidated and Allowed General Unsecured Claim amount, the Trustee shall prepare a written stipulation to be executed by the parties and the Mediator that reflects the liquidated amount of the General Unsecured Claim and any other terms of the parties' agreement, including waiver of the Claimant's right to assert any additional claims against the Trust, if that is part of the agreement.

2.15  If after following these procedures, the Claimant and the Trustee fail to reach agreement as to the amount of an allowed liquidated claim, then the Mediator shall fix such amount in a written report prepared by the Mediator, which amount shall be the Allowed General Unsecured Claim amount for purposes of the Trust Agreement.

DOCS_LA:268443.3 75293/002

**[Form of Notice of Mediation]**

TO THE GENERAL UNSECURED CLAIMANT OF RODEO CREEK GOLD INC., ANTLER

PEAK GOLD INC., HOLLISTER VENTURE CORPORATION OR TOUCHSTONE

RESOURCES COMPANY:

     The General Unsecured Claim of _____ [State name of Claimant] has been

assigned, pursuant to the Mediation Agreement between us, to the following Mediator and

Alternate Mediator:

5

Mediator:

Alternate Mediator:

_____
Name

_____
Name

_____
Firm Name

_____
Firm Name

_____
Address

_____
Address

_____
City, State, Zip Code

_____
City, State, Zip Code

_____
Telephone and Email Address

_____
Telephone and Email Address

The attorneys for the parties are:

Attorney for Trustee:

Claimant or Attorney for Claimant:

_____
Name

_____
Name

_____
Firm Name

_____
Firm Name

_____
Address

_____
Address

_____
City, State, Zip Code

_____
City, State, Zip Code

_____
Telephone and Email Address

_____
Telephone and Email Address

The Mediator will host and participate in a telephonic Pre-Mediation Conference to be held at _____ [time] on _____[date].

6

The purpose of the Pre-Mediation Conference is to discuss (1) fixing a convenient date and place for the Mediation Conference, (2) the procedures that will be followed during the Mediation Conference, (3) who shall attend the Mediation Conference on behalf of each party, (4) what material or exhibits should be provided to the Mediator before the Mediation Conference, and (5) any issues or matters that it would be helpful to have the parties address in their written Mediation statements.

If the above-stated date or time for the call is inconvenient for the Claimant or the Trustee, then that party shall contact the Mediator to advise of the conflict and propose reasonable alternative times for the call, bearing in mind the timetables set forth in the Plan governing when the Mediation Conference must be held.

Submitted By:


DATED: _____          _____
                                                                  Trustee




100711907_1.DOC

DOCS_LA:268443.3 75293/002